# UNITED STATES DISTRICT COURT
# DISTRICT OF MAINE

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| v. | ) |
| | ) Docket no. 2:12-cr-0053-NT |
| DARRELL LEE ROATH, | ) |
| | ) |
| Defendant. | ) |

## OPINION AND ORDER
## ON MOTION TO SUPPRESS

Defendant Darrell Lee Roath ("**Defendant**") is charged with failure to register as a sex offender in violation of 18 U.S.C. § 2250. This case comes before the Court on Defendant's motion to suppress identity information obtained from him during an encounter with Officer Douglas Weed of the Scarborough, Maine Police Department in the early morning hours of December 14, 2011.[1] For the reasons discussed below, the Defendant's motion is DENIED.

## FACTS

On the afternoon of July 11, 2012, the Court held an evidentiary hearing on the Defendant's motion to suppress. Two witnesses were called: Officer Douglas Weed, a patrolman with the Scarborough Police Department ("**SPD**"), and Officer John Edward Gill, Jr., an SPD officer currently assigned to the United State's Marshal's Office as part of the violent offender task force. Based on the testimony of

---

[1] Defendant has withdrawn his argument that a subsequent interview occurring outside of Defendant's car on the afternoon of December 15, 2011 was an un-*Mirandized* custodial interrogation. However, in supplemental briefing he does argue that information obtained in this interview should be suppressed as fruit of the poisonous tree.

these individuals and the exhibits introduced into evidence at the hearing, the Court makes the following findings of fact.

At approximately 2:30 a.m. on December 14, 2011, Officer Weed was patrolling alone in his marked SPD cruiser along the Gorham Road in Scarborough when he passed a man walking along the side of the road. The road was unlit, and there were no other people around. Officer Weed decided to initiate contact with the man, so he executed a u-turn, drew up across the road from the individual, and asked him if he was okay. The individual responded that he was okay and he explained that he was walking home from work. Over the course of the next few minutes, Officer Weed asked this person several questions, including where he was going, where he worked, who his supervisor was, and whether he regularly walked home from work. He also asked this individual whether he had seen any suspicious activity in the area. Toward the end of the conversation, Officer Weed asked the man for his name and date of birth, and the man identified himself as Darrell Roath, and provided his date of birth. Roath asked Officer Weed if he was all set, and Officer Weed responded that Roath was all set, unless he needed a ride. Roath declined the offer and continued on his way.

Officer Weed's primary purpose in stopping to talk to Roath was to determine if Roath needed any help. Officer Weed was also interested in asking Roath if he had seen any suspicious activity, because there had been nighttime vehicle break-ins within the area over the prior month.

2

Officer Weed felt that Roath's answers to his questions were plausible, and he had no reason to suspect that Roath was engaged in any wrongdoing. Throughout the conversation, Officer Weed remained in his patrol vehicle. He made no demands of Roath, and though he used a voice loud enough to project across the road, his tone was conversational. At no time did Officer Weed place any physical restraint on Roath, nor did he exit his cruiser or show his weapon. Officer Weed testified that he spoke with Roath for three to four minutes, which is corroborated by the SPD Radio traffic report (marked as Government's Exhibit 1A) which recorded that by the time of a dispatch status check occurring 4 minutes and 55 seconds into the call, Officer Reed had finished questioning Roath and was entering notes of his encounter into the computer.

At some point during the encounter, Officer Weed's supervisor, Sergeant O'Neill, also armed and in uniform, drove by in his police cruiser and asked if everything was alright. When Officer Weed responded that everything was okay, Sergeant O'Neill continued on his way. Officer Weed estimated that Sergeant O'Neill was present for only a few seconds.

Following the encounter, Officer Weed entered Roath's name into police databases and learned that Roath was a registered sex offender in California. Officer Weed did not write a report of his encounter with Roath, but generated a call slip that included the time and place of the encounter, identified Roath, and included the information on Roath's sex offender status. Officer Weed then referred the matter to another officer in charge of sex crimes. The matter was assigned to

Officer Gill, who initiated an investigation of Roath. Officer Gill created a written report, which included Officer Gill's recollection of a conversation with Officer Weed. According to Officer Gill's report, Roath provided Officer Weed with photo identification. Officer Weed testified, however, that he was certain that he did not ask for or receive any photo ID from Roath. The Court credits Officer Weed's testimony.

## **DISCUSSION**

### **A. The December 14, 2011 Encounter Did Not Implicate the Fourth Amendment**

Defendant contends that Officer Weed's encounter with him in the early morning hours of December 14, 2011 was an investigatory stop conducted without reasonable articulable suspicion. Investigatory stops are "seizures" governed by the Fourth Amendment, and are only lawful when justified by reasonable articulable suspicion. *Terry v. Ohio*, 392 U.S. 1, 88 S. Ct. 1868, 20 L. Ed. 2d 889 (1968). The Government asserts that the encounter did not constitute an investigatory stop.

The First Circuit has explained that:

> Interaction between law enforcement officials and citizens generally falls within three tiers of Fourth Amendment analysis, depending on the level of police intrusion into a person's privacy. The first or lowest tier encompasses interaction of such minimally intrusive nature that it does not trigger the protections of the Fourth Amendment. The Supreme Court has repeatedly emphasized that not all personal intercourse between the police and citizens rises to the level of a stop or seizure. *See Florida v. Bostick*, 501 U.S. 429, 434, 111 S. Ct. 2382, 2386, 115 L. Ed. 2d 389 (1991) (citing cases). Police may approach citizens in public spaces and ask them questions without triggering the protections of the Fourth Amendment. *See id.; United States v. Manchester*, 711 F.2d 458, 460 (1st Cir. 1983). Such police engagements

4

> need not find a basis in any articulable suspicion. *See Bostick*, 501 U.S. at 435, 111 S. Ct. at 2386-87. Police conduct falls short of triggering Fourth Amendment protections when, from the totality of the circumstances, we determine that the subject of any police interaction would have felt free to terminate the conversation and proceed along his way. *See Bostick*, 501 U.S. at 435, 111 S. Ct. at 2388-89; *United States v. Sealey,* 30 F.3d 7, 9 (1st Cir. 1994).

*United States v. Young,* 105 F.3d 1, 5-6 (1st Cir. 1997). *See also, United States. v. Drayton*, 536 U.S. 194, 200, 122 S. Ct. 2105, 153 L. Ed. 2d 242 (2002) ("Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen.) Provided coercive means are not employed, the police may ask questions, request identification, and even ask for consent to search without implicating the Fourth Amendment. *Id.* at 201. *See also United States v. Fernandez*, 600 F.3d 56, 60 (1st Cir. 2010) ("The Court repeatedly has held that police requests for identifying information typically do not trigger Fourth Amendment concerns.").

"The test is objective: Would a reasonable person standing in the shoes of the individual who is approached have felt free to cease interaction with the officer and depart?" *United States v. Espinoza*, 490 F.3d 41, 49 (1st Cir. 2007). "[S]ince most tend to feel some degree of compulsion when confronted by law enforcement officers asking questions, such discomfort cannot be the measure of a Fourth Amendment seizure. If it were, officers would effectively be barred from approaching citizens at all, absent full-blown probable cause." *United States. v. Smith*, 423 F.3d 25, 28 (1st Cir. 2005).

5

To guide the Court's inquiry, the Supreme Court has summarized examples of circumstances that might indicate a seizure, such as: 1) the threatening presence of several officers; 2) the display of a weapon by an officer; 3) some physical touching of the person; and 4) the use of language or tone of voice indicating that compliance with the officer's request might be compelled. *U.S. v. Mendenhall*, 446 U.S. 544, 554, 100 S. Ct. 1870, 64 L. Ed. 2d 497 (1980). The key is whether there was anything coercive or confrontational about the encounter, such as the application or show of force, including intimidating movements, brandishing weapons, threats, commands, or authoritative tone of voice. *See Espinoza*, 490 F.3d at 50 (officer who commanded individual to shut off his vehicle's engine supported a finding of coercion, implicating the Fourth Amendment).

In this case, there was one officer in uniform in a marked cruiser who never activated his lights or exited the cruiser. A second officer stopped but left seconds after being assured that Officer Weed was okay. Officer Weed was armed but he never displayed or referred to a weapon. Officer Weed did not act in a threatening manner, and he never touched the Defendant who was standing a traffic lane away from him. The Defendant was not physically restrained or hemmed in, and there was no restriction on his movement. Although Officer Weed may have spoken loudly enough to be heard over the cruiser's radio, there is no evidence that he used an unduly loud or intimidating tone of voice. Officer Weed described the exchange as conversational, and there is no evidence to suggest otherwise.

The Defendant argues that asking who the Defendant worked for was intimidating, but, in the context of asking where the Defendant worked, the question was not unduly coercive. There were no commands and Officer Weed's questions were not accusatory. The encounter was brief and Officer Weed was satisfied with the answers the Defendant had given him. The exchange ended with an offer of a ride, which the Defendant felt capable of declining. Based on the totality of the circumstances, the Court finds that a reasonable person standing in the Defendant's shoes would have felt free to cease the interaction and depart. The exchange amounted to no more than standard police questioning. The encounter was consensual, and, thus, the protections of the Fourth Amendment were not triggered.

Because the Court concludes that there was no violation of the Defendant's Fourth Amendment rights, the Court need not address the Defendant's fruit of the poisonous tree argument or the Government's additional argument that evidence of identity is never suppressible.

## CONCLUSION

For the reasons stated, the Defendant's motion to suppress is DENIED.
SO ORDERED.

/s/ Nancy Torresen
United States District Judge

Dated this 26th day of July, 2012.